UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN S. ELPEDES, | No. C 09-362 MHP (pr) |
| Petitioner, | **ORDER DENYING HABEAS PETITION** |
| v. | |
| FERNANDO GONZALEZ, warden, | |
| Respondent. | |

## INTRODUCTION

Ruben Elpedes filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. The matter is now before the court for consideration of the merits of the amended petition. For the reasons discussed below, the amended petition will be denied.

## BACKGROUND

The crime was summarized by the California Court of Appeal:

> The victim, (V.), is defendant's daughter; she was eight years old at the time of the offense. Defendant and V.'s mother separated in 1999, and defendant had visitation with V. every other weekend. V. was visiting with defendant on January 22, 2005, at a time when he lived with his friends Edwin and Bella T. and their children in their home. . . .V. testified at trial that while she was trying to sleep at the T.'s house earlier that evening, defendant pulled down her pajama pants and rubbed her vagina over her panties, causing it to bleed.

Pet. Ex. 1, California Court of Appeal Opinion ("Cal. Ct. App. Opinion"), pp. 1-4.

At a jury trial in 2006 in Alameda County Superior Court, Elpedes was convicted of committing a lewd act on a child. Cal. Penal Code § 288(a). He was sentenced to six years in prison.

Elpedes appealed. The California Court of Appeal affirmed his conviction and the

1 California Supreme Court denied his petition for review. He then filed this action.

2 Elpedes' amended petition for writ of habeas corpus alleged one claim for relief: prosecutorial misconduct. The court found the claim to be cognizable in a federal habeas action and ordered respondent to show cause why the amended petition should not be granted. Respondent filed an answer. The matter is ready for a decision on the merits.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Alameda County, California, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). State court remedies were exhausted for the claim in this petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

## DISCUSSION

Elpedes contends that the prosecutor committed misconduct in his opening statement, violating Elpedes' Fourteenth Amendment right to due process. Elpedes alleges that the prosecutor's mention of Elpedes' drug use and domestic violence history violated a court order. To understand his claim, one must consider an in limine proceeding in the trial court.

Elpedes filed a pretrial motion in limine to exclude "other crimes evidence on the grounds that such evidence is inadmissible propensity evidence and more prejudicial than probative." RT 52. In discussing the motion, the prosecutor expressed his intent to defend the victim's mother's credibility by "elicit[ing] interactions that . . . [she] had with the defendant." RT 53. Defense counsel expressed his intent to "prevent . . . the jury coming to the conclusion that [the defendant] has a propensity to commit crimes, period," and to use the volatile parental relationship to show that "[the mother's family] coached this child to a certain extent because of this animosity." RT 54-56. The trial court granted the motion, stating that it was "granted to the extent that it's not propensity evidence, but they can get into it for other reasons." RT 57. The court also phrased its ruling as, "they can't get into other crimes evidence for propensity. But they can allow–they can talk about arrests or

police contacts if it relates to something else in the dispute." RT 55.

In his opening statement, the prosecutor remarked that, "[w]hen V.'s mom was with the defendant, he was abusive to her . . . [and he] also used methamphetamine on a regular basis." RT 135. Defense counsel then moved for a mistrial, calling the prosecutor's statement "outrageous," and saying it had "nothing to do with this trial." RT 136. The court denied the motion for mistrial. The court explained that, "given [that] the history of this relationship and the relationship itself has become the focus of the trial and will be the focus of the defense. . . . the relationship that's been going on has to come out. So I will deny the motion for mistrial." RT 146.

The California Court of Appeals rejected the claim that the prosecutor's remarks disobeyed the judge's ruling on the motion in limine and amounted to prosecutorial misconduct.

> Since the opening remarks were at least arguably permitted by the court's ruling, making them cannot be deemed deliberate misconduct. . . . Defendant notes that the court stated, in ruling on the mistrial motion, that it wished the prosecutor had been more specific about what he wanted to broach in the opening statement, but that remark was not tantamount to an accusation of misconduct. Further discussion of the other crimes evidence showed that, when it ruled on the mistrial motion, the court was entertaining the possibility that evidence of the defendant's methamphetamine use might be admissible. . . . Even if the prosecutor's opening remarks could be characterized as misconduct, the error was not prejudicial. . . . The jury was instructed three times–before opening statements, during opening statements, and before deliberations–that statements of counsel were not evidence.

Cal. Ct. App. Opinion, pp. 8-10.

When considering a claim of prosecutorial misconduct in federal habeas corpus, the appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power. See Darden v. Wainwright, 477 U.S. 168, 181 (1986). A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." See id.; Smith v. Phillips, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"). Under Darden, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness. Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005).

4

If the prosecutor's remarks were not improper, the analysis ends; however, if the remarks were improper, the court looks to the circumstances at trial to determine whether such misconduct violated due process. The first factor in determining whether misconduct amounted to a violation of due process is whether the trial court issued a curative instruction. When a curative instruction is issued, a court presumes that the jury has disregarded inadmissible evidence or improper comment and that no due process violation occurred. See Greer v. Miller, 483 U.S. 756, 766 n.8 (1987); Darden, 477 U.S. at 182. This presumption may be overcome if there is an "overwhelming probability" that the jury would be unable to disregard evidence and a strong likelihood that the effect of the misconduct would be "devastating" to the defendant. See Greer, 483 U.S. at 766 n.8; see, e.g., Tan, 413 F.3d at 1115-16 (finding trial fair where jury received instructions five different times to consider only the evidence presented, and not its sympathy for the victim's life story). Other factors which a court may take into account in determining whether misconduct rises to a level of due process violation include: (1) the weight of evidence of guilt, compare United States v. Young, 470 U.S. 1, 19 (1985) (finding "overwhelming" evidence of guilt) with United States v. Schuler, 813 F.2d 978, 982 (9th Cir. 1987) (in light of prior hung jury and lack of curative instruction, new trial required after prosecutor's reference to defendant's courtroom demeanor); (2) whether the misconduct was isolated or part of an ongoing pattern, see Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir. 1987); (3) whether the misconduct relates to a critical part of the case, see Giglio v. United States, 405 U.S. 150, 154 (1972) (failure to disclose information showing potential bias of witness especially significant because government's case rested on credibility of that witness); and (4) whether a prosecutor's comment misstates or manipulates the evidence, see Darden, 477 U.S. at 182.

Further, habeas relief for prosecutorial misconduct only would be available if the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); see, e.g., Johnson v. Sublett, 63 F.3d 926, 930 (9th Cir. 1995) (in light of "great mass of evidence against defendant," prosecutorial vouching "could not have had substantial impact on the verdict necessary to establish

5

reversible constitutional error" under Brecht).

Applying Darden, the first question is whether the prosecutor's remarks were improper. The prosecutor's opening statement remarks were not improper because the judge's in limine ruling specifically allowed the prosecutor to broach other crimes evidence to bolster the credibility of its witness and to rebut the defense theory. The defense planned to and did urge at trial that the child's accusations were the product of the mother's bitterness toward Elpedes. To show that this was not the case, the prosecution wanted to show that the mother actually and reasonably perceived Elpedes to present a danger instead of simply wanting to get even with him after an unsuccessful custody battle and relationship. The prosecutor's challenged remarks – like the mother's later testimony on Elpedes' abuse of her – were made for the permissible purpose of rebutting the defense that the child was being used to get even with Elpedes. The court declined to grant a mistrial, which indicates that the trial court recognized that its in limine ruling permitted the remark or at least was ambiguous on the point. The state appellate court also thought the in limine ruling was ambiguous, as does this court.  This ambiguity makes it hard to say that the prosecutor deliberately disobeyed the order with his remarks in his opening statement.

Even if the remark was improper, it did not amount to a violation of due process under the circumstances. First, the court thrice instructed the jury that counsel's statements were not evidence – once before the opening statements, once immediately after the objection was made, and once before deliberations started.  There is no reason to believe that the jury did not follow the instructions. Second, the evidence of guilt was reasonably strong. The child-victim's statements about the touching incident remained largely consistent from the time when she first reported the incident through the time she testified at trial. The child also exhibited to an adult (other than her mother) a physical symptom consistent with the lewd act having occurred, prompting that adult to tell Elpedes to call the child's mother. When Elpedes returned the child to her mother shortly thereafter, Elpedes said, "don't say anything stupid," which suggested there was something to conceal. Third, the prosecutor's remark about Elpedes' methamphetamine use and domestic violence history was isolated. Elpedes'

6

substance and spousal abuses were not the main theme of the prosecutor's opening statement. Although Elpedes' relationship with the victim's mother was a focus of the trial, his methamphetamine use and abuse of the victim's mother were not a significant part of the evidence proving that he had molested his daughter. Finally, the prosecutor did not misstate or manipulate the evidence referenced in his opening statement. The remarks did not result in a violation of due process.

Even if the statements by the prosecutor amounted to prosecutorial misconduct, Elpedes has not shown that the assumed error had a substantial and injurious effect or influence in determining the jury's verdict. The prosecutor only mentioned the drug use and domestic violence once, and the judge properly instructed the jury that counsel's statements were not to be viewed as evidence. Further, evidence of spousal abuse by Elpedes was revealed at trial because the relationship between the parents was explored as a possible reason for their child's accusation. And, as noted above, the evidence was relatively strong.

The state court's rejection of Elpedes' prosecutorial misconduct claim was not contrary to or an unreasonable application of clearly established federal law as set forth by the U.S. Supreme Court. The state court decision also did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Elpedes is not entitled to the writ on his claim.

## CONCLUSION

The amended petition for writ of habeas corpus is DENIED on the merits. The clerk shall close the file.

IT IS SO ORDERED.

DATED: July 28, 2010

Marilyn Hall Patel
United States District Judge

7